United States District Court
Southern District of Texas
**ENTERED**
December 04, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| PAUL LARA, § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. B-17-77 |
| § | |
| NANCY A. BERRYHILL, § | |
| ACTING COMMISSIONER OF § | |
| SOCIAL SECURITY ADMIN., § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Magistrate Judge is the petition for review of the denial of Disability Insurance Benefits and Supplemental Security Income benefits filed by Paul Lara ("Lara"). Dkt. No. 1.

Having reviewed the record and the pleadings, the Court recommends that the petition should be denied. There is substantial evidence to support the findings of the Administrative Law Judge ("ALJ").

**I. Background**

**A. Procedural History**

On April 1, 2013, Lara applied to receive Disability Insurance Benefits and Supplemental Security Income benefits. Dkt. No. 11-7, p. 221.[1] Lara claimed that his disability effective date was February 1, 2012. Id. On June 14, 2013, Lara's claim was denied. Dkt. No. 11-4, p. 90. On December 21, 2013, after reconsideration, Lara's claim was again denied. Dkt. No. 11-4, p. 104. On August 14, 2015, a hearing was held before an ALJ. Dkt. No. 11-3, p. 41. The hearing was continued to allow Lara to seek representation. Id, p. 46. On November 30, 2015, the ALJ held another hearing, with Lara's representative present. Id, p. 48. On March 8, 2016, the ALJ decided that Lara was not entitled to benefits. Id, p. 19. On February 13, 2017, the Appeals Council denied Lara's timely request for

---

[1] The citation to the record refers to the Bates-stamped number on each record page.

review. Id, p. 1. On April 7, 2017, Lara timely sought review of the Commissioner's decision in this Court. Dkt. No. 1.

### B. Factual Context

Lara was born in October 1958 and was 53 years old at the time of his claimed disability onset date. Lara lives in Lyford, Texas. Dkt. No. 11-7, p. 221.

The ALJ found that Lara suffered from "lumbar degenerative joint disease, left heel spur, major depressive disorder, anxiety disorder, alcohol dependence and cocaine abuse." Dkt. No. 16-3, p. 10. These findings, generally, are undisputed. Instead, Lara disputes the ALJ's resolution of Lara's objections to the vocational expert's testimony.

### C. Lara's Medical History

During his treatment and the disability process, Lara was examined by multiple doctors. A summary of their observations and findings follows.

On March 14, 2012, Lara was examined by Dr. Allan Spence, complaining of acid reflux. Dkt. No. 11-10, pp. 393-396. He was diagnosed with depression and gastroesophageal reflux disease ("GERD"). Id.

On April 11, 2012, Lara underwent psychological screening – as part of his intake processing – relating to Lara's incarceration for a driving while intoxicated conviction.[2] Dkt. No. 11-10, p. 412. He reported being previously diagnosed with depression in 2010 and that he had been taking Zoloft for the depression since 2010. Id., p. 413. He also reported that in 1981, he was in a motorcycle accident where his head hit the pavement and he was hospitalized for two months. Id.

On April 13, 2012, Lara had an initial medical examination, again as part of his incarceration. Dkt. No. 11-10, p. 399. He reported being afflicted with Hepatitis C. Id.

On May 29, 2012, he was given a mental health evaluation at the prison. Dkt. No. 11-10, p. 421. At that time, he was diagnosed as suffering from an "adjustment disorder with

---

[2] Lara was incarcerated from February 2012 until January 2013. Dkt. No. 11-11, p. 561. His April screening occurred when he was transferred to state custody after being incarcerated in the Willacy County State Jail. Id, p. 562.

2

depressed mood." Id. He admitted to a history of abusing alcohol, marijuana, cocaine, and heroin. Id., p. 423.

On August 1, 2012, Lara spoke to a mental health professional at the prison, stating that was "feeling depressed because he received a visit from his sister and she stated that his mother was placed in hospice." Dkt. No. 11-10, p. 436.

On October 24, 2012, Lara again spoke with a mental health professional at the prison. Dkt. No. 11-10, p. 438. At that time, Lara reported that his mother had passed away and that he had not been informed of the fact for a month. Id. "He stated that at first he was angry about not knowing but then felt an unexpected feeling of peace come over him." Id.

On November 27, 2012, Lara had a follow-up health exam at the prison, where he reported no symptoms from his hepatitis. Dkt. No. 11-10, p. 403. He did complain of "very bad heartburn" and omeprazole was prescribed to treat the heartburn. Id, p. 404.

On December 11, 2012, Lara had a follow-up psychiatric evaluation. Dkt. No. 11-10, p. 441. At that time, he was diagnosed with depressive disorder and Prozac was prescribed. Id.

On December 14, 2012, Lara was examined in the prison after complaining of a rash. Dkt. No. 11-10, p. 406. It was diagnosed as "warm erythema" and antibiotics were prescribed. Id. On December 21, 2012, Lara was prescribed additional antibiotics to treat the rash. Id., p. 408.

On January 14, 2013 – after he had been released from prison – Lara was examined at Tropical Texas Behavioral Health ("Tropical Texas"). Dkt. No. 11-11, p. 561. At that time, Lara was diagnosed with major depressive disorder with a history of aggression and "fleeting auditory hallucinations." Id. He stated that he "has had symptoms since his late 20s" but was "in denial." Id.

On February 7, 2013, Lara was examined by Dr. Ubaldo Salazar-Alamillo. Dkt. No. 11-10, p. 507. Lara complained of back pain and was prescribed ibuprofen to treat it. Id., p. 510. He was also prescribed medication for GERD, depression and hypertension. Id., p. 511-512.

On April 10, 2013, Lara was administered a psychiatric evaluation at Tropical Texas. Dkt. No. 11-11, p. 539. Lara was diagnosed with "the recent development of major depressive disorder and history of alcohol dependence" and it was noted that "it is very possible that his substance use is related to the symptoms that he is experiencing." Id., p. 545. He was prescribed Prozac for his depression. Id., p. 546.

On May 7, 2013, Lara was again examined by Dr. Salazar-Alamillo. Dkt. No. 11-10, p. 502. Lara still complained of back pain and was prescribed tramadol to treat it. Id., pp. 503-04. He was also prescribed fluoxetine for his depression. Id., p. 505.

On May 8, 2013, Lara had a clinic visit at Tropical Texas. Dkt. No. 11-11, p. 555. Lara reported that "his depression has improved with increased dose of Prozac. Id. He was still reporting difficulty falling asleep and anxiety and was prescribed Remeron and Vistaril for these conditions. Id.

On May 13, 2013, Lara was examined by Dr. Shridhar Kotta as part of a disability evaluation. Dkt. No. 11-10, p. 522. Dr. Kotta diagnosed Lara as having a "mechanical low back ache with no complications," "chronic Hepatitis C with no complication," and "GERD with no complication." Id., pp. 523-24. As part of the examination, images were taken of Lara's spine, which indicated "fairly severe degenerative changes" including "sclerosis of posterior facets at L4-L5 and L5-S1." Id., p. 527.

From May 2013 until November 2013, Lara was in a rehabilitation program for parole violations, after a urine test he submitted came back positive for cocaine. Dkt. No. 11-11, p. 596. On November 5, 2013, Lara was again examined at Tropical Texas, where he remained on Prozac, Remeron and Vistatril; he was told that he needed to abstain from illegal drugs. Id.

**D. State Agency Evaluations**

Two state agency consultants – Dr. James Murphy and Dr. Sarah Jackson – reviewed Lara's medical records, regarding his psychological abilities, as part of the SSI process.[3]

**1. Dr. James Murphy**

On June 14, 2013, Dr. Murphy, a state agency medical consultant, reviewed Lara's medical records as part of the disability evaluation. Dkt. No. 11-4, pp. 79-90. Dr. Murphy opined that Lara's "affective disorders" were severe. Id., p. 84. Dr. Murphy also opined that Lara was "moderately limited" in his ability to understand and remember detailed instructions and had "sustained concentration and persistence limitations." Id., p. 86. Dr. Murphy stated that Lara was "moderately limited" in his ability to "work in coordination with or in proximity to others without being distracted by them," and was also "moderately limited" in his ability "to complete a normal workday and workweek without interruptions from psychologically based symptoms." Id, p. 87. Dr. Murphy further opined that Lara was "moderately limited" in his ability to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes[;]" and was similarly limited in his "ability to respond appropriately to changes in the work setting." Id, p. 87.

**2. Dr. Sarah Jackson**

On December 27, 2013, Dr. Jackson, a state agency medical consultant, reviewed Lara's medical records in determining a residual functional capacity assessment. Dkt. No. 11-4, pp. 98-102.

Like Dr. Murphy, Dr. Jackson opined that Lara's "affective disorders" were severe. Id., p. 101-102. Dr. Jackson's opinions on Lara's limitations matched Dr. Murphy's, with one exception. Dr. Murphy found that Lara was not "not significantly limited" in his ability

---

[3] Several other state agency consultants reviewed Lara's physical capacities as well. Because Lara's briefing focuses on his mental limitations – and the ALJ's decision regarding his vocational abilities – the Court will not address the physical capacity evaluations. By not raising any issues regarding his physical capacities in his briefing, Lara has waived them. Mid-Continent Cas. Co. v. Bay Rock Operating Co., 614 F.3d 105, 113 (5th Cir. 2010).

to "accept to instructions and respond appropriately to criticism from supervisors[,]" while Dr. Jackson found that Lara was "moderately limited" in that respect. Dkt. No. 11-4, pp. 87, 102.

Before turning to and examining the specifics of the ALJ's decision in Lara's case, it is first necessary to understand the disability determination process, as it relates to disability applications.

## II. Determining Disability – The Five-Step Process

A claimant must be disabled to receive benefits under Title II of the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id.

To determine whether a claimant is disabled, the Commissioner is required to employ a sequential five-step process. 20 C.F.R. § 404.1520; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The burden of proof lies with the claimant at each step; except for step five, which contains a shifting burden. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). "A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the [. . .] analysis." Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

### 1. Step One

In the first step, the claimant must show that he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is defined as work that involves "doing significant and productive physical or mental duties" and is "done (or intended) for pay or profit." 20 C.F.R. § 404.1510. If the claimant is working and the work constitutes substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b).

### 2. Step Two

The second step of the process, requires the claimant to show that his or her impairment is medically severe. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one which "significantly limits [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Unless the impairment is expected to result in death, it must have lasted – or be expected to last – for at least 12 months. 20 C.F.R. § 404.1509. If a claimant cannot show a medically severe impairment that meets the duration requirement, the claimant is not disabled under the law. 20 C.F.R. § 404.1520(c). As noted, this showing applies to both physical and mental impairments.

### 3. Step Three

At the third step, the claimant must demonstrate an impairment that is listed in Appendix 1 to 20 C.F.R. § 404.1520(p) (a "listed impairment") – or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant can show that the impairment meets the duration requirement and is a listed impairment, then he or she is adjudged to be disabled without regard to age, education, or work experience. 20 C.F.R. § 404.1520(d). If the claimant cannot show a listed impairment – or its equivalent – the process continues to step four. 20 C.F.R. § 404.1520(e).

### 4. Step Four

In step four, the claimant must show that he or she lacks the "residual functional capacity" to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is defined as gainful activity performed within the last 15 years, where the claimant's employment lasted long enough for the claimant to learn how it is performed. 20 C.F.R. § 404.1560(b)(1).

#### a. Residual Functional Capacity.

Residual functional capacity "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Irby v. Barnhart, 180 Fed.Appx.

7

491, 493 (5th Cir. 2006)(unpubl.) (citing Social Security Ruling 96-8p).

In addressing complaints of pain, the ALJ is required to follow a two-step process. 20 CFR § 404.1529(a); Herrera v. Commissioner of Social Sec., 406 Fed.Appx. 899, 905 (5th Cir. 2010) (unpubl.). "Both SSR 96-7p and 20 C.F.R. § 404.1529 emphasize that subjective symptoms alone, absent some indication that they are supported by objective medical evidence, fail to support a disability finding." Salgado v. Astrue, 271 Fed.Appx. 456, 460 (5th Cir. 2008) (unpubl.). Thus, to establish a disability, the criteria in both steps must be satisfied.

The first step is a determination of whether the pain is the product of a medically determinable impairment "reasonably capable of producing the symptoms." SSR 96-7p. Complaints of pain "will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 CFR § 404.1529(b). "The ALJ proceeds to the second step only if the Claimant is found to have a medically determinable impairment that could cause the alleged symptoms." Winget v. Astrue, 2007 WL 4975206, *10 (W.D. Tex. 2007) (unpubl.). In other words, if the evidence does not objectively support a conclusion that the injury is reasonably capable of producing the pain, then a finding of no disability is required.

On the other hand, if the medical evidence objectively identifies an impairment that could reasonably produce the claimed pain, the inquiry turns to the level and impact of that pain. The second step in evaluating complaints of pain is to evaluate the "intensity, persistence, and limiting effects of the individual's symptoms" on their ability to do basic work activities. SSR 96-7p. In performing this evaluation, the ALJ considers the objective medical evidence; the claimant's testimony; the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. Id.

The ALJ also considers treatment – other than medication – that the individual receives or has received for relief of pain or other symptoms. These treatments can include

8

things such as lying flat on his or her back; standing for 15 to 20 minutes every hour; or sleeping on a board. Finally, the ALJ also considers any other factors relating to the claimant's functional limitations and restrictions resulting from pain or other symptoms. Id.

One major factor, in determining whether the claimant has the RFC to perform his or her prior relevant work, relates to the level of exertion of that work.

### b. Exertion Level

The Commissioner classifies work based upon its exertion level. 20 C.F.R. § 404.1567. All jobs in the national economy are placed into one of five categories, from the lowest to the highest exertion level: sedentary, light, medium, heavy, and very heavy. Id. A finding that a claimant can perform a certain level of exertion also results in a finding that the claimant can perform lesser levels of exertion. For example, a finding – via the residual functional capacity – that a claimant can perform medium work necessarily results in a finding that the claimant can also perform work within the lesser included levels of exertion, i.e. light and sedentary. Id.

The opposite is also true. Social Security disability determinations are based upon the most that a claimant can do. 20 C.F.R. § 416.945. Thus, a finding that a claimant can perform work at the light level necessarily means that the claimant cannot perform work at the medium, heavy, or very heavy levels. 20 C.F.R. § 404.1567. In the fourth step of the process, the Commissioner compares the level of exertion that the claimant can perform with his prior relevant work.

If the claimant can perform at a level of exertion greater than or equal to the level required to perform his or her prior relevant work, the claimant is determined not to be disabled. If the claimant cannot perform work at a level of exertion greater than or equal to the level required to perform his or her prior relevant work, the process moves to step five.

### 5. Step Five

The fifth step requires the Commissioner to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner makes the requisite showing, the burden shifts to the claimant to rebut the Commissioner. Masterson

v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002).

The Commissioner considers the claimant's RFC, as well as the claimant's age, education, and experience, in determining whether the claimant can perform other substantial work within the national economy. 20 C.F.R. § 404.1520(g)(1); Masterson, 309 F.3d at 272. Based upon these considerations, the Commissioner must show that the claimant can perform work in the national economy and that such work exists in significant numbers in that economy.[4]

If the Commissioner can show that the claimant can perform other substantial work within the national economy, the claimant is adjudged not to be disabled. 20 C.F.R. § 404.1520(g)(1). If the Commissioner fails to show that the claimant is capable of performing other work, or if the claimant successfully rebuts the Commissioner's findings, the claimant is found to be disabled and is entitled to disability benefits. Id.

### III. The ALJ's Decision

In step one, the ALJ found that Lara had not engaged in substantial gainful activity since January 30, 2013. Dkt. No. 11-3, p. 24. That finding is not challenged.

In step two, the ALJ found that Lara suffered from "the following severe impairments: lumbar degenerative joint disease, left heel spur, major depressive disorder, anxiety disorder, alcohol dependence and cocaine abuse." Dkt. No. 11-3, p. 24.

The ALJ – in his step three analysis – found that Lara did not have an impairment or combination of impairments that "equal[ed]" a listed impairment, moving the process to step four. Dkt. No. 11-3, p. 24.

In step four, the ALJ found that Lara had the RFC to perform "a range of light work." Dkt. No. 11-3, pp. 26. As relevant here, the ALJ found that Lara "remains able to perform the mental demands of work that requires him to understand, remember and carry out

---

[4] In making this determination, the ALJ takes into account the claimant's age. The Commissioner places the claimant into one of three age categories: (1) younger person, i.e. one who is under age 50; (2) person closely approaching advanced age, i.e. one who is 50 to 54 years old; or (3) a person of advanced age, i.e. who is age 55 or older. 20 C.F.R. § 404.1563(c)-(e).

instructions consistent with 3- to 4-step operations, working generally, but not exclusively with data and objects, rather than people, in a setting that is goal-oriented versus requiring that he maintain a specific pace consistently throughout a workday." Dkt. No. 11-3, p. 26. The ALJ added that Lara "can tolerate occasional interaction with supervisors, co-workers and the public. Within that context, he remains able to sustain attention for 2-hour blocks throughout an 8-hour workday; complete assigned tasks with ordinary supervision; exercise sufficient judgment to make basic work-related decisions; adjust to changes in a routine work environment; and adhere to a normal schedule." Id.

The ALJ also found that Lara was unable to perform his past relevant work as a tractor trailer truck driver. Dkt. No. 11-3, p. 31.

The ALJ found that Lara – who was 54 years old on the date that the application was filed was considered to have "advanced age," with a "limited education," but was "able to communicate in English" and "acquired work skills" from his previous work as a tractor-trailer truck driver. Dkt. No. 11-3, pp. 31-32.

Based upon the testimony of Donna Johnson, the vocational expert, the ALJ found – in step five – that there were sufficient jobs in the national economy, such as car rental delivery driver and road roller operator, that Lara could still perform. Dkt. No. 11-3, pp. 32-33.

Based upon Lara's RFC and his ability to perform sedentary work, the ALJ concluded that Lara was not disabled. Dkt. No. 16-3, p. 19.

After the hearing, but prior to the issuance of the ALJ's decision, Lara filed a series of objections to Johnson's testimony. Dkt. No. 11-9, p. 335.[5] As relevant here, Lara objected to Johnson's testimony that he could perform the jobs of rental car delivery driver and road roller operator under a limitation of only being able to tolerate "occasional interaction with

---

[5] Lara filed six objections to Johnson's testimony. Dkt. No. 11-9, p. 335. With the exception of the fourth objection – which is addressed at length in this report and recommendation – Lara expressly states that the remaining objections were sufficiently addressed by the ALJ and does not raise them in this administrative appeal. Dkt. No. 13, p. 5, n. 4.

supervisors, co-workers and the public." Dkt. No. 11-9, p. 341. Lara submitted an affidavit from Paula Santagati, a vocational rehabilitation counselor, who opined that "the limitation of occasional interaction with coworkers and supervisors precludes all work as the training and probationary period for any job would require more than occasional interaction with co-workers and supervisors." Id. The Court notes that Santagati's affidavit discussed jobs such as cashiering, dishwasher, cleaning services and entry-level positions at senior living communities. Dkt. No. 11-9, pp. 381-82. Santagati's affidavit did not address the jobs actually identified by Johnson that Lara could conceivably perform. Id.[6]

Lara further argued that the only way he could successfully complete the training and probationary periods would be if an employer "accommodated such a limitation to allow for a prolonged training period to ensure only occasional interaction with coworkers and supervisors." Id, p. 342.

In addressing the objection, the ALJ stated that the objection went to the weight that should be given to Johnson's testimony, rather than its admissibility. Dkt. No. 11-3, p. 23. The ALJ went on to state that the substance of the objection "is addressed in greater detail in the discussion of transferable skills later in this decision." Id. In the section regarding transferable skills, the ALJ stated that Johnson "affirmed that her opinions as to the impact of the limitations that [Dictionary of Occupational Titles] does not specifically address (e.g. distinguishing public interaction from other workplace interaction) were based upon her education, experience, and personal observations as a vocational rehabilitation consultant." Dkt. No. 11-3, p. 32.[7]

---

[6] The Court notes that this affidavit may be a form affidavit, as it has been used in at least one other federal social security appeal. Reeves v. Berryhill, No. 3:16-CV-2510, 2017 WL 3433706, at *11 (M.D. Pa. Aug. 10, 2017). The plaintiff in Reeves cited the Santagati affidavit to make similar arguments to those made in this case. Reeves, 2017 WL 3433706 at *11. The district court rejected the argument and affirmed the ALJ's decision as to this issue. Id.

[7] The portion of Johnson's testimony that the ALJ is referring to appears to be the following question and answer.
ALJ: To the extent we've asked you to opine on issues that the [Dictionary of Occupational

**IV. Applicable Law**

    **A. Standard of Review**

The Court's review of the Commissioner's decision to deny disability benefits is limited to two inquiries: (1) whether the final decision is supported by "substantial evidence;" and (2) whether the Commissioner used the proper legal standards to evaluate the evidence. Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Moore v. Sullivan, 919 F.2d 901, 904 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts within the evidence are not for the court to resolve." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The decision by the ALJ must "stand or fall" on the rationale set forth in the ALJ's opinion. Newton v. Apfel, 209 F.3d at 455. The Court will not uphold the ALJ's decision by finding or creating a different, better, or more adequate basis. Securities and Exchange Commission v. Chenery Corp., 332 U.S. 194, 196 (1947). "Reviewing courts do not consider rationales supporting an ALJ's decision that are not invoked by the ALJ." Orr v. Commissioner of Social Security Administration, Civil No. 3:08-CV-1592-K, 2009 WL 2337793 at *9 (N.D. Tex. July 27, 2009) (citing Bagwell v. Barnhart, 338 F. Supp.2d 723, 735 (S.D. Tex. 2004)).

Furthermore, the Court generally employs a harmless error standard in reviewing

---

Titles] simply doesn't address, like, tolerance for things like being off task or needing reminders or redirection or being absent, let's see, that's pretty much it, oh, distinguishing interaction with the public from other workplace interaction are your opinions as to the effect of such limitations based on your education, experience and personal observations as a vocational rehabilitation consultant?
    Johnson: Yes, that is true.
    Dkt. No. 11-3, p. 76.

administrative proceedings. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required"). The Court will not reverse a judgment unless "the substantial rights of a party have been affected." Id. (remand was not warranted when the claimant would not have been found disabled, even if the Court applied his proffered standard).

## V. Analysis

Despite the voluminous records in this case, Lara's complaint boils down to two issues: (A) whether the ALJ adequately addressed his objection; and (B) whether the ALJ's decision, regarding the existence of jobs in the national economy that could be performed by Lara, is supported by substantial evidence. It is the Commissioner's burden to establish that there is work in the national economy that Lara can still perform. 20 C.F.R. § 404.1520(a)(4)(v). The Court finds that the ALJ adequately addressed Lara's objection and, further, that the ALJ's decision is supported by substantial evidence.

### A. Objection Response

Lara asserts that the ALJ did not adequately address his objection to Johnson's testimony. This claim is not supported by the record.

Lara objected to Johnson's testimony on the grounds that the testimony did not consider whether Lara could successfully complete the training and probationary periods necessary to hold the position of rental car delivery driver and road roller operator. Lara claimed that Johnson's testimony was contradicted by the Santagati affidavit. Dkt. No. 11-3, p. 23.

The ALJ found that the objection went to the weight that should be given to Johnson's testimony, rather than its admissibility. Dkt. No. 11-3, p. 23. The ALJ went on to state that the issue of the proper weight to be given to that testimony was addressed later in the decision. Id. The ALJ expressly found that Johnson's opinion "does not conflict with the information contained in the [Dictionary of Occupational Titles] or its companion publications." Id, p. 32. The ALJ further stated that Johnson's opinions on issues that were

not directly addressed by the DOT were based on her "education, experience and personal observation" and implicitly found the vocational expert's testimony to be credible. Id.

Internal Social Security regulations require that the ALJ "must" rule on any objections raised by the claimant and "may" do so "on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision." HALLEX I-2-6-74(B). The ALJ clearly addressed the substance of Lara's objection, even if Lara disagreed with the conclusions. Even if the Court assumes that the ALJ's decision was not as expansive as it could have been, that is not a basis for remand. As previously noted, "[p]rocedural perfection in administrative proceedings is not required." Mays, 837 F.2d at 1364. As discussed further, the ALJ's decision is supported by substantial evidence, which dictates that Lara's claim should be denied.

### B. Substantial Evidence

Lara asserts that the ALJ's decision, regarding whether there were sufficient jobs in the national economy, is not supported by substantial evidence. This argument, like the first, is not supported by the record.

As previously noted, there is a shifting burden standard when determining whether there are sufficient jobs in the national economy that an applicant can still perform. First, the Commissioner is required to show that the claimant is capable of performing other work. 20 C.F.R. § 404.1520(a)(4)(v). Once the Commissioner meets this standard, the burden shifts to the claimant to rebut the Commissioner's showing. Masterson, 309 F.3d at 272.

Johnson's testimony provides substantial evidence that there are sufficient jobs in the national economy that Lara can perform.

The ALJ found that Lara "can tolerate occasional interaction with supervisors, co-workers and the public," a finding to which Lara does not object. Dkt. No. 11-3, p. 26. "Occasionally" is defined as "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5.

The ALJ specifically asked Johnson for jobs that Lara could do with "occasional

interaction with pretty much everybody," given his other limitations in his residual functional capacity and his skills acquired from previous work experience. Dkt. No. 11-3, p. 71. The vocational expert identified car rental delivery driver and road roller operator. Id. By necessary implication, the vocational expert's testimony indicated held that Lara could complete the training process for those two positions. In the absence of such an implication, the ability to perform the work is meaningless if a prospective employee could never complete the necessary training. The ALJ is entitled "to rely upon the vocational expert's knowledge of job requirements." Nichols v. Astrue, 269 F. App'x 526, 528 (5th Cir. 2008) (citing Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000)).

The Commissioner "can meet its burden to show the existence of employment for the applicant by pointing to testimony at the hearing that there are a number of jobs suited to the [Claimant's] capabilities which were available to him in his geographical locale." Morris v. Bowen, 864 F.2d 333, 335-36 (5th Cir. 1988). The vocational expert's testimony meets this burden.[8]

Given that there is substantial evidence to support the Commissioner's finding, that sufficient work exists in the national economy that Lara can still perform, the burden shifts to Lara to prove that the Commissioner's finding was erroneous. Lara has not met this burden.

Lara places great evidentiary weight upon Santagati's affidavit, which is "based on [her] 24 years of experience placing individuals with disabilities into competitive employment." Dkt. No. 11-9, p. 381 Id. The affidavit, however, does not change the outcome. At best, Santagati's affidavit presents evidence which conflicts with Johnson's testimony. It is not the Court's job to substitute its judgment for the ALJ's judgment when the record presents evidentiary conflicts; the ALJ's judgment is to remain undisturbed. Casanova v. Astrue, 327 F. App'x 464, 465 (5th Cir. 2009).

---

[8] In Texas, there are 19,000 jobs as a car rental delivery driver and 18,000 jobs as a road roller operator. Dkt. No. 11-3, p. 32.

Even if the Court were to consider Santagati's affidavit at face value, it does not mandate a different result. Boiled down to its essence, Santagati opines that any claimant who is limited to occasional interaction with supervisors, co-workers and the public is <u>per se</u> disabled because all jobs require a training and probationary period which entail interactions with others. <u>See</u> Dkt. No. 11-9, p. 381 ("it is this writer's opinion that a limitation of occasional interaction with coworkers and supervisors precludes all work . . ."). Santagati goes on to discuss a series of jobs that are either in customer service (cashiering at a drug store or supermarket, working for a cleaning service) or require teamwork to complete (dishwasher, factory work, work for a senior living facility). <u>Id</u>.

Santagati identifies no factual basis beyond her own opinion as to why every single job in America requires more than occasional interaction with others. As previously noted, occasional means up to one-third of a workday. SSR 83-10, 1983 WL 31251, at *5. In Santagati's opinion, every single job that can possibly be imagined requires interaction with others for more than 2 hours and 40 minutes in an eight hour workday. Santagati's opinion is not sufficiently supported by any evidence. Furthermore, it does not specifically discuss the interactions that can be expected of a car rental delivery driver or road roller operator, the jobs actually identified by Johnson and cited by the ALJ.

The entries for car rental delivery driver and road roller operator, in the Dictionary of Occupational Titles, do not describe jobs that require more than occasional interaction with the public. The entry for road roller operator does not mention any interaction with co-workers, supervisors or the public. Dictionary of Occupational Titles 859.683-030. The entry for car rental delivery driver notes that the employee details the car (wash, vacuum, checks tire pressure, gasoline and oil, etc) and "[d]elivers [the] automobile to [a] customer at specified pickup point, [c]ollects rental payment and deposit from customer; and observes that customer reads and signs rental contract." Dictionary of Occupational Titles 919.663-010. There is nothing in the description mandating that the car rental delivery driver's training would involve more than one-third of the workday be spent interacting with other people.

17

Simply put, it is Lara's burden to show that the jobs of car delivery driver and road roller operator would require training that includes more than occasional interactions with others. Because there is no evidence in the record to support Lara's claim, he has failed to meet his burden. Accordingly, Lara's claim should be denied.

## VI. Recommendation

WHEREFORE the Court recommends that the petition for review of the denial of Disability Insurance Benefits and Supplemental Security Income benefits filed by Paul Lara be denied.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1) (eff. Dec. 1, 2009). Failure to timely file objections shall bar the parties from a <u>de novo</u> determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. <u>See</u> § 636(b)(1); <u>Thomas v Arn</u>, 474 U.S. 140, 149 (1985); <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on December 4, 2017.

_____
Ronald G. Morgan
United States Magistrate Judge